IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02435-NYW

S.J.R.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title II of the Social Security Act (the "Act") for review of the final decision of Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **AFFIRMED**.

## BACKGROUND

In this action, Plaintiff S.J.R. challenges the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB"). S.J.R. applied for DIB on July 8, 2021. [Doc. 11-3 at 98].[2] Plaintiff alleged in his application that he is disabled due to the

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using his initials only.

[2] When citing to the Administrative Record, the Court utilizes the docket number assigned by the Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of each page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

following conditions: generalized anxiety disorder, chronic back pain, degenerative disc disorder, spinal stenosis, abnormal narrowing of the spinal column, transitional vertebra, multilevel spinal pain, asthma, and bipolar disorder. [*Id.*]. S.J.R. listed his disability onset date as September 3, 2020. [*Id.*].

The Social Security Administration ("SSA") initially denied Plaintiff's request for benefits on February 17, 2022, [Doc. 11-4 at 122–25], and affirmed its denial after Plaintiff requested reconsideration, [*id.* at 126–29]. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), [*id.* at 132–33], and a hearing was convened before ALJ Jeffrey Holappa on January 6, 2023, [Doc. 11-2 at 64].

On January 26, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. [*Id.* at 44–59]. In the decision, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2025 and that Plaintiff had not engaged in substantial gainful activity as of his alleged disability onset date of September 3, 2020. [*Id.* at 47]. The ALJ determined that Plaintiff has the following severe impairments: degenerative disk disease and degenerative joint disease of the lumbar spine, status post remote diskectomy surgeries; obesity; hypertension; status post COVID-19; generalized anxiety disorder; a panic disorder; depression; attention deficit disorder; and bipolar disorder, but also concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations. [*Id.*].

With respect to mental impairments, the ALJ found that Plaintiff has a mild limitation in understanding, remembering, and applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining

pace; and a mild limitation in adapting or managing oneself.  [*Id.* at 47–48].[3]  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567,[4] but with the following restrictions:

> [Plaintiff] can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, sit up to 6 hours in an 8 hour day, stand/walk up to 6 hours in an 8 hour day, push and pull as much as he can lift and carry, but is limited to frequently climbing of ramps and stairs, occasional climbing of ladders, ropes or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling.  [Plaintiff] is further limited to no concentrate[d] exposure to dust, odors, fumes, pulmonary irritants, unprotected heights o[r] moving mechanical parts.  Finally, [Plaintiff] is limited to understanding, remembering and carrying out simple and detailed but not complex instructions, making simple and detailed but not complex work-related decisions, dealing with changes consistent with a simple and detailed but not complex work setting, and maintaining concentration, persistence and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks.

[*Id.* at 49].  The ALJ concluded that Plaintiff is unable to perform any of his past relevant work, [*id.* at 57], but also determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, [*id.* at 58].  Specifically, the ALJ concluded that Plaintiff could perform work as a cashier, a sales attendant, or a price marker.  [*Id.* at 59].

---

[3] A "mild" limitation is present when the claimant's "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is slightly limited."  A "moderate" limitation exists when the claimant's "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(F)(2)(b)–(c).

[4] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  "To be considered capable of performing a full or wide range of light work, [the person] must have the ability to do substantially all of these activities."  *Id.*

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 26, 2023, [*id.* at 1–3], which rendered the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently sought judicial review of the Commissioner's decision in the United States District Court for the District of Colorado on September 19, 2023. [Doc. 1]. This matter is now ripe for consideration, and the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, has not reached retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that they were disabled prior to their date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). An individual is disabled only if their "physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1509. When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. § 423(d)(2)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4). The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

See id. § 404.1520(a)(4)(i)–(v); see also Williams v. Bowen, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's decision, the Court limits its inquiry to whether it is supported by substantial evidence and whether the Commissioner applied the correct legal standards. See Vallejo v. Berryhill, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Flaherty, 515 F.3d at 1070 (quotation omitted), and evidence is not substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion," Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). In conducting its review, the Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." Smith v. Colvin, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and, for this reason, remand is appropriate. According to Plaintiff, the ALJ failed to incorporate the mental limitation opinions of Maryanne Wharry, Psy.D., into the RFC assessment despite finding those opinions "persuasive." [Doc. 13 at 5–6]. S.J.R. asserts that the ALJ was required to either incorporate Dr. Wharry's opinions in the RFC or explain why he was omitting them, and that the failure to do so is reversible error. [*Id.* at 5–9]. The Commissioner responds first by summarizing the medical record, [Doc. 15 at 2–5], and arguing that the ALJ "reasonably concluded Plaintiff's mental impairments did not preclude all work," [*id.* at 6–9 (emphasis omitted)], though this general argument does not directly respond to Plaintiff's contentions. Turning to Plaintiff's specific position on review, the Commissioner contends that "substantial evidence supports the ALJ's assessment" of Plaintiff's abilities and that the RFC is consistent with Dr. Wharry's limitation opinions. [*Id.* at 9].

Dr. Wharry, a non-examining state agency psychologist, completed a form in which she assessed Plaintiff's "[s]ustained [c]oncentration and [p]ersistence [l]imitation[s]," opining that Plaintiff is moderately limited in the ability to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods. [Doc. 11-3 at 111]; *see also* [Doc. 11-2 at 48]. She also opined that Plaintiff is not significantly limited in the abilities to carry out very short and simple instructions, perform activities within a schedule, sustain an ordinary routine, or make simple work-related decisions. [Doc. 11-3 at 111]. When asked to "[e]xplain in narrative form [Plaintiff's] sustained concentration and persistence capacities and/or limitations," Dr. Wharry stated: "Clmt

6

MSE," i.e., Plaintiff's mental status evaluation, "shows that he has poor detail, is distracted, and no follow through [sic]." [*Id.*]. And in a section of the form titled "MRFC Additional Explanation," Dr. Wharry opined that Plaintiff "retains the mental ability to do work involving some skills but not involving more complex duties; can be expected to do work requiring up to [one half] year's time to learn techniques, acquire information and develop facility needed for an average job performance." [*Id.*]. The ALJ recounted and weighed Dr. Wharry's opinions as follows:

> M. Wharry, Psy.D., . . . determined that the claimant retained the mental ability to do work involving some skills but no [sic] involving more complex duties, can be expected to do work requiring up to half a year's time to learn techniques, acquire information and develop the facility needed for an average job performance. Dr. Wharry found limits in sustained concentration and persistence, noting that mental status exams had shown the claimant had poor command of detail, was distracted and had no follow through. She fond [sic] moderate limitations in the ability to carry out detailed instructions and to maintain However, [sic] she found no evidence of limits in social interaction or adaptation. The Administrative Law Judge finds this opinion persuasive, as the claimant has only mild limits in the ability to understand, remember or apply information, interact with others and adapt or manage oneself based on Dr. [Brian] Wise's treatment records and the detailed examination by Dr. [Ginger] Arnold.

[Doc. 11-2 at 56 (citations omitted)].

Consistent with Dr. Wharry's opinions, the ALJ concluded at step three that Plaintiff is moderately limited in concentration, persistence, and pace. [*Id.* at 48]. The ALJ explained that although Plaintiff had reported that he has trouble following written instructions, Plaintiff "was able to [follow written instructions] during the psychological consultative exa[m]" and "appeared to maintain good concentration and was able to remember and follow instructions during Dr. Arnold's consultative exam." [*Id.*]. He also noted that Plaintiff's "immediate, short term and long term memory were intact during an October 22, 2021 exam by Dr. Wise" and that Plaintiff "performed in the normal range or

7

better for attention span, divided attention, sequencing and processing speed." [*Id.*].

Again, the ALJ fashioned an RFC with the following mental limitations:

> [Plaintiff] is limited to understanding, remembering and carrying out simple and detailed but not complex instructions, making simple and detailed but not complex work-related decisions, dealing with changes consistent with a simple and detailed but not complex work setting, and maintaining concentration, persistence and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks.

[*Id.* at 49].

Plaintiff contends that the ALJ's RFC determination "is not supported by substantial evidence because he failed to incorporate" the moderate limitations in concentration, persistence, and pace found by Dr. Wharry into the RFC assessment or explain their omission. [Doc. 13 at 6]. He further asserts that the determination that he can carry out detailed instructions, make detailed work-related decisions, and deal with changes in a detailed work setting is inconsistent with Dr. Wharry's opinion about his limitations in the areas of concentration, persistence, and pace. [*Id.* at 7–8].

The Court respectfully disagrees with Plaintiff's contentions. As a preliminary manner, the Court notes that, at step three and consistent with Dr. Wharry's opinions, the ALJ *did* find that Plaintiff is moderately limited in his ability to maintain concentration, persistence, and pace. *See* [Doc. 11-2 at 48]. However, an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *cf. E.R.D. v. O'Malley*, No. 23-cv-02155-LTB, 2024 WL 3276158, at *4 (D. Colo. July 2, 2024) (explaining that the SSA's psychiatric review technique, which measures—among other things—the claimant's ability to concentrate, persist, and maintain pace, is different from the RFC assessment,

8

which measures the "claimant's functional limitations on their ability to work").  Thus, the Court approaches Plaintiff's argument with the understanding that a moderate limitation in concentration, persistence, and pace does not automatically equate to a clear-cut work-related functional limitation for purposes of the RFC.

Furthermore, the Court is respectfully unpersuaded by Plaintiff's suggestion that because the ALJ found Dr. Wharry's opinions persuasive, the RFC must mirror Dr. Wharry's conclusions.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record," *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004), and an ALJ has an independent obligation to fashion an RFC based on the medical record as a whole.  Courts have accordingly recognized that an ALJ is not required to adopt or mirror a medical source's opinions wholesale in fashioning an appropriate RFC.  *See, e.g.*, *Evelyn K. N. v. O'Malley*, No. 4:23-cv-00045-JFJ, 2024 WL 709203, at *4 (N.D. Okla. Feb. 20, 2024) ("[T]he ALJ was not required to precisely adopt [medical source] opinions when finding them persuasive."); *J.S.M. v. Kijakazi*, No. 22-cv-00884-RM, 2023 WL 2033747, at *3 (D. Colo. Feb. 15, 2023) ("Finding an opinion is 'generally persuasive' does not mean that it must be incorporated into the RFC wholesale."); *Hannigan v. Saul*, No. 19-cv-03045-MEH, 2020 WL 1969536, at *6 (D. Colo. Apr. 23, 2020) (an "RFC determination [need not] exactly match [a medical source's] conclusions").  Thus, as a general matter, the Court is not persuaded that the RFC must mirror the opinions of a medical source the

9

ALJ finds persuasive, and Plaintiff has not directed the Court to any authority showing otherwise.  *See generally* [Doc. 13].

To be sure, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and if the ALJ credits a medical opinion but then fashions an RFC that conflicts with that opinion, an ALJ must explain the discrepancy between the medical opinion and the RFC, *Parker v. Commissioner*, 772 F. App'x 613, 614 (10th Cir. 2019).  But neither of these scenarios is present here, as the Court is not convinced that a moderate limitation in concentration, persistence, or pace, or Dr. Wharry's statement that Plaintiff "has poor detail, is distracted, and no follow through [sic]," [Doc. 11-3 at 111], inherently conflicts with the ALJ's determination that Plaintiff can handle simple and detailed, but not complex, instructions, decisions, and settings.

First, Plaintiff does not cite any legal authority demonstrating that a person with moderate limitations in concentration or persistence is *entirely unable* to perform tasks with detailed (but not complex) instructions, make detailed (but not complex) decisions, or work in a detailed (but not complex) setting.  *See generally* [Doc. 13].[5]  A moderate

---

[5] The Court notes that Plaintiff's argument focuses on the portion of the RFC stating that Plaintiff can handle simple and detailed, but not complex, instructions, decisions, and settings, *see* [Doc. 13 at 7–8], and that he does not clearly argue that the RFC determination that Plaintiff can "maintain[] concentration, persistence and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks" is inconsistent with or fails to account for Dr. Wharry's opinions, *see generally* [*id.*]; *but see* [*id.* at 8 (citing another case where the court concluded that the RFC's two-hour restriction failed to account for the claimant's moderate limitations in concentration, persistence, and pace, but not making any argument about this case specifically)]. Accordingly, the Court does not address whether there is any inconsistency between the moderate limitation in concentration, persistence, and pace and the ALJ's finding that

limitation in concentration, persistence, and pace means that Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *fair*." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (emphasis added). In other words, a moderate limitation in this area does not mean that Plaintiff can *never* perform tasks with detailed, but not complex, instructions or requiring detailed, but not complex, decisions. *Cf. McCall v. Colvin*, No. 5:15-cv-00639-D, 2016 WL 775994, at *6 (W.D. Okla. Jan. 29, 2016) (concluding that moderate limitations in concentration, persistence, and pace were "incorporated . . . into" the RFC, which limited the plaintiff to "simple and detailed, but not complex or involved, instructions"), *report and recommendation adopted*, 2016 WL 815338 (W.D. Okla. Feb. 29, 2016); *cf. D.R.B. v. Kijakazi*, No. 2:21-cv-02143-DDC, 2022 WL 4465044, at *10 (D. Kan. Sept. 26, 2022) ("Critically, Dr. Tschudin's opinion only opined that plaintiff was '[l]imited' in reaching, and it never opined that plaintiff *never* could reach at all. The ALJ accounted for those limitations by limiting plaintiff to frequent (as opposed to constant) reaching in all directions and no overhead reaching with either arm." (citation omitted and alteration in original)).

Nor does the Court find any inherent inconsistency between the RFC determination and Dr. Wharry's statement that Plaintiff has "poor detail, is distracted, and no follow through," [Doc. 11-3 at 111], as pressed by Plaintiff, *see* [Doc. 13 at 8]. First,

---

Plaintiff can maintain concentration for two-hour periods. However, the Court notes that other courts have found such limitations consistent with moderate limitations in concentration, persistence, and pace, *see, e.g.*, *Hite v. Saul*, 457 F. Supp. 3d 1175, 1192 (D.N.M. 2020) (finding that limit to working "two hours at a time during the workday with normal breaks" adequately accounted for moderate limitation in sustained concentration, pace, and persistence), and, as explained below, finds that the ALJ adequately explained his RFC determination and that the RFC determination is supported by substantial evidence.

11

while this argument is not raised by the Commissioner, the Court questions whether this statement is a true "medical opinion" as contemplated by the Regulations. *See* 20 C.F.R. § 404.1513(a)(2)(ii) (defining "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities," including the claimant's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting"); *see also Staheli v. Commissioner*, 84 F.4th 901, 906 n.2 (10th Cir. 2023) (explaining that the "current definition of a medical opinion requires 'a statement from a medical source' about *both* 'what [the claimant] can still do despite [her] impairment(s)' *and* 'whether [she has] one or more impairment-related limitations or restrictions in [specified] abilities'" (quoting 20 C.F.R. § 404.1513(a)(2)) (alterations in original)). Dr. Wharry's narrative statement that Plaintiff has "poor detail, is distracted, and no follow through" does not itself "provide evidence concerning [Plaintiff's] ability to perform the specific demands of work activities" or explain what Plaintiff "can still do despite [his] impairments." *Staheli*, 84 F.4th at 906 n.2, 907 (quotation omitted).

Even setting this aside and assuming that the statement is properly considered a medical opinion, Dr. Wharry's narrative statement that Plaintiff "has poor detail, is distracted, and no follow through [sic]," [Doc. 11-3 at 111], is not a picture of clarity. While Plaintiff believes that Dr. Wharry intended to say that he has "poor [attention to] detail," *see* [Doc. 13 at 7], this is not clear from the record, and the Court cannot add words to Dr. Wharry's statement in an attempt to ascertain her meaning. And while Plaintiff

12

contends that the "RFC does not include any mental limitations that one could conceivably argue account for Dr. Wharry's finding that Plaintiff is moderately limited in concentration and persistence, insofar as Plaintiff exhibits 'poor [attention to] detail, is distracted, no follow through,'" [*id.* at 9 (alteration in original)], Plaintiff does not explain *why* the RFC limitations to simple and detailed, but not complex, workplace instructions, decisions, and settings do not adequately account for his moderate limitation.  *See D.R.B.*, 2022 WL 4465044, at *10 (affirming ALJ's decision where the plaintiff "never explain[ed] adequately how the RFC conflict[ed] with [the medical source's] opinion"); *cf. Ruben M. v. O'Malley*, No. 2:23-cv-02349-JWL, 2024 WL 3104579, at *8 (D. Kan. June 24, 2024) (affirming the Commissioner's decision where the plaintiff "ha[d] not shown that finding moderate limitations in the ability to understand, remember, and carry out instructions does not encompass, prohibits finding, or requires finding greater limitations than the ability to 'understand, remember and carry out simple, detailed but not complex instructions' as the ALJ found when assessing [the p]laintiff's RFC").  Indeed, Dr. Wharry further opined that Plaintiff "retains the mental ability to do work involving some skills but not involving more complex duties" or can perform work "requiring up to [one half] year's time to learn techniques, acquire information and develop facility needed for an average job performance," [Doc. 11-3 at 111], and Plaintiff does not address this opinion or how it factors in to Dr. Wharry's opinions as a whole or the ALJ's ultimate RFC assessment, *see generally* [Doc. 13].

For these reasons, the Court is respectfully unpersuaded by Plaintiff's reliance on *Pitts v. Kijakazi*, which is distinguishable from the instant matter.  Plaintiff argues that the alleged error here "is an error ALJ Holappa has made before," asserting that "[i]n *Pitts*,

13

the District of New Mexico found ALJ Holappa's mental RFC for, *inter alia*, unskilled work and maintaining concentration, persistence, and pace for at least two-hour intervals did not adequately address the agency psychologists' moderate limitations concerning attention, concentration, and persistence, despite ALJ Holappa finding such limitations persuasive." [*Id.* at 8 (quotation omitted)].

In *Pitts*, two doctors each opined in Section I of the SSA's Mental Residual Functional Capacity Assessment ("MRFCA") form that, among other limitations, the claimant was moderately limited in his ability to maintain concentration and attention for extended periods, and narratively opined in Section III of the MRFCA form that the claimant could remember, understand, and carry out simple tasks without routine supervision.[6]  *Pitts v. Kijakazi*, No. 20-cv-01205-CG, 2021 WL 5049441, at *5 (D.N.M. Nov. 1, 2021).  Relying on Tenth Circuit authority holding that if a Section III narrative opinion "fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the [opinion] cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding," *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015), the *Pitts* court concluded that the doctors' Section III narrative opinions "[did] not appear to adequately address how [the claimant's] moderate limitations in maintaining attention and concentration for extended periods of time affect[ed] his RFC," such that the ALJ had "erred in relying on [the doctors'] opinions as substantial evidence supporting th[at] portion

---

[6] The MRFCA form contains three sections.  Section I "is for recording summary conclusions derived from the evidence in the file," and Section III is where the medical consultant provides a formal narrative explanation for the limitations described in Section I.  *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (quotation omitted).

14

of his RFC determination," *Pitts*, 2021 WL 5049441, at *6. The ALJ separately concluded that neither the "RFC assessment limiting [the claimant] to unskilled work" nor "any of the limitations [the ALJ] included in his RFC" adequately addressed the claimant's moderate limitations in maintaining attention, concentration, persistence, or pace. *Id.* at *7.

The Court finds *Pitts* distinguishable from this case, where Plaintiff argues that the ALJ failed to take Dr. Wharry's limitations opinions into account, not that the ALJ improperly relied on insufficient narrative explanations in fashioning the RFC. Moreover, the Court notes that Plaintiff, in his reply brief, emphasizes that Dr. Wharry did not complete an MRFCA form, like the doctors did in *Pitts*. *See* [Doc. 16 at 1–2]. And finally, for the reasons explained above and reviewing the ALJ's decision as a whole, the Court is satisfied that the ALJ's RFC determination is supported by substantial evidence (i.e., "more than a mere scintilla" of evidence), *Flaherty*, 515 F.3d at 1070, and that there was no contradiction between Dr. Wharry's opinions and the RFC assessment that the ALJ was required to explain.

The ALJ explained that during a consultative examination, Plaintiff "appeared to maintain good concentration and was able to remember and follow instructions" and that he "performed in the normal range or better for attention span, divided attention, sequencing and processing speed," as well as "abstract reasoning, general knowledge, working memory, me[n]tal arithmetic, visual spatial skills, processing speed, auditory attention span, language skills, verbal memory, delayed visual memory, divided attention and sequencing and rapid inhibition of automatic response on a color-word interference test." [Doc. 11-2 at 48, 52]; *see also* [*id.* at 53 (noting examination where Plaintiff's "immediate, short and long term memory were intact")]; *see also* [Doc. 11-9 at 803; Doc.

15

11-11 at 1777, 1780–82]. While the ALJ noted that "[n]europsychological testing showed impaired scores for immediate recall, recall of an interference word list and problem-solving, cognitive flexibility and ability to keep track of what he was doing on a complex, problem solving task" and that Plaintiff scored in the "low average range" of immediate recall of story details, simple shapes and cognitive flexibility, [Doc. 11-2 at 52], the ALJ further noted the examiner's impression that Plaintiff's "performance during [the] exam and testing was the same as or better than that of other people his age, except for difficulty with immediate memory of stories and simple designs, problem solving, and keeping track of what he was doing," [*id.* at 53]. Additionally, the ALJ considered Plaintiff's reports of playing virtual reality poker for two hours at a time, as well as completing other activities such as "building with Lego" or "searching through coins," and noted that Plaintiff "did not report limitations in pursuing these activities and his ability to engage in them." [*Id.*]. The ALJ found that this "supports a conclusion that [Plaintiff] has the mental residual functional capacity to understand, remember and carry out simple and detailed instructions, make simple and detailed work-related decisions and maintain concentration, persistence and pace for at least two hours over a normal 8-hour workday and 40-hour work week." [*Id.*]. Plaintiff does not challenge these conclusions, *see generally* [Doc. 13], and these conclusions are not inherently inconsistent with Dr. Wharry's opinions that, while Plaintiff is moderately limited in concentration, persistence, and pace, or may have trouble with details or distraction, he nevertheless "retains the mental ability to do work involving some skills but not involving more complex duties," [Doc. 11-3 at 111].

For all of these reasons, the Court concludes that the ALJ's RFC determination was supported by substantial evidence. The Commissioner's decision will be affirmed.

**CONCLUSION**

For the reasons set forth in this order, the Commissioner's decision is respectfully **AFFIRMED**.

DATED:  September 9, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge